**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

JEREMIAH GARY,

                        Petitioner,

           v.                                          06-CV-0248
                                                         (DNH/DRH)

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

                        Respondent.
-----------------------------------------------------------------

**APPEARANCES:**                      **OF COUNSEL:**

JEREMIAH GARY
Petitioner Pro Se
03-B-2608
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011-0149

HON. ANDREW M. CUOMO          ALYSON J. GILL, ESQ.
Attorney General for the State        LUKE MARTLAND, ESQ.
  of New York                        Assistant Attorneys General
Attorney for Respondent
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Petitioner pro se Jeremiah Gary ("Gary") is currently an inmate in the custody of the

New York State Department of Correctional Services (DOCS) at Attica Correctional Facility.

Gary was found guilty after a bench trial in Oneida County Court on October 27, 2003 of

---

     [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

criminal possession of a controlled substance and criminally using drug paraphernalia. Gary was sentenced as a second felony offender to a total indeterminate term of ten to twenty years imprisonment.  Gary now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that: (1) the seizure of Gary, and the subsequent search of his jacket violated the Fourth Amendment, (2) the use of "expert testimony" was improper, (3) the New York legislature did not intend ziplock baggies to constitute drug paraphernalia, and (4) the sentence was "unduly harsh and severe."

## I.  Background

On January 30, 2003, officers from the New York State Division of Parole, Utica Police Department, and other agencies, entered a second-floor apartment at 1016 George Place in Utica, New York in search of two men who had absconded while on parole.  T. at 29–30.[2]  Upon entering the apartment, one of the two men, William Robinson, was located and arrested, but the second man, Nathaniel Harvey, was not found in the apartment.  T. at 31.

While in the apartment, Parole Officer Clifford Cuda answered the apartment telephone and a woman who identified herself as Shannon Brown stated that she was the first-floor tenant, and asked what "was going on."  T. at 32.  Cuda identified himself and asked if he could talk to her.  T. at 32.  Cuda, accompanied by three other officers, went downstairs to see if Nathaniel Harvey had fled the upstairs apartment.  T. at 32–33.  After explaining the situation, Cuda asked Brown's permission to search her apartment.  T. at 33.

---

[2] "T." refers to the page(s) of the trial transcript included with respondent's answer.

Brown consented to a search, after which Cuda and Parole Officer McCarthy entered the apartment.  T. at 33.  Upon searching a small bedroom, McCarthy discovered a man crouched behind a bed dressed only in his boxer shorts.  T. at 53.  McCarthy, not recognizing the man and believing him to be Nathaniel Harvey, ordered the man to show his hands.  T. at 34, 53, 54.  Initially, the man did not respond, but after repeated orders the man showed his hands, was handcuffed and was placed on the bed.  T. at 34, 54.

Upon entering the room, Cuda recognized the man as Gary for whom Cuda believed there existed an outstanding arrest warrant.  T. at 35–36, 55. After it was confirmed that there existed an outstanding warrant from Oneida County Family Court, the officers placed Gary under arrest, and prepared to take him to police headquarters.  T. at 36, 55–57. Officer Lyndon Fox found a man's clothing – a coat, two long-sleeved shirts, and a pair of jeans – on a dining room chair, which were identified by Gary as his.  T. at 76–77.  While in the dining room, Fox searched each article of clothing prior to handing them to McCarthy, who was dressing Gary.  T. at 77–78, 102.

Officer Fox found nothing in the pants and shirts, but upon searching the inside left pocket of the coat, he discovered money, cigarettes, and two baggies.  T. at 77–78.  One baggie contained a "white rock-like substance in little pink baggies" and the other baggie contained more pink baggies.[3]  T. at 78.  Fox  took the coat to Gary, who stated that he did not want "my coat."  T.  at 77–78, 90, 103.

The substance in the baggies was determined to be 500 milligrams of crack cocaine. T. at 116–17.  In addition, a razor blade with cocaine residue on it was discovered in the

---

[3] A total of sixty-three unused, pink baggies were discovered.  T. at 118.

baggie.  T. at 118.  Investigator Mark Ammann, an undercover drug-purchaser for the

Oneida County Drug Enforcement Task Force, testified that crack addicts normally used

whatever drugs they possessed until they were gone and would not keep unused drugs

overnight.  T. at 130–32.  In addition, Ammann testified that a razor blade would be used to

cut larger chunks of cocaine into smaller quantities for packaging and distribution.  T. at

131–32.

Gary was found guilty and sentenced as indicated above.  Gary filed a brief in the

Appellate Division, arguing the same four claims asserted here above.  The Appellate

Division affirmed, People v. Gary, 19 A.D.3d 1118 (4th Dep't 2005), and on September 28,

2005, the New York Court of Appeals denied leave to appeal.  People v. Gary, 5 N.Y.3d 828

(2005).   This action followed.


## II.  Discussion

### A. Expert Testimony and Legislative Intent

Respondent contends that Gary has failed to exhaust his improper use of expert

testimony and legislative intent claims and thus, these claims should be dismissed.


### 1. Law

A petitioner must exhaust all state court remedies prior to bringing a habeas petition.

28 U.S.C. § 2254(b)(1)(A) (1996).  A petitioner's habeas petition claims must have been

included in his appeal to the state's intermediate appellate court and in his application for

permission to appeal to the state's highest court.  O'Sullivan v. Boerckel, 526 U.S. 838, 848

(1999).  A petitioner must "fairly present" all claims to the highest state court and "alert the

court to the claim's federal nature" to exhaust state court remedies.  Daye v. Attorney Gen.

of the State of N.Y., 696 F.2d 186, 191–92 (2d Cir. 1982).  A petition "fairly presents" a

claim, if it includes

> (a) reliance on pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like fact situations,
> © assertion of the claim in terms so particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of a pattern of facts that is
> well within the mainstream of constitutional litigation.

Id. at 194.   However, pursuant to 28 U.S.C. § 2254(b)(2), "[a]n application for writ of

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

exhaust the remedies available in the courts of the State."  See Hayes v. Coombe, 142 F.3d

517, 519 (2nd Cir. 1998).


### 2. Exhaustion And Procedurally Barred

Here, Gary contends that (1) the use of expert testimony to establish that he

possessed cocaine with the intent to sell was improper, and (2) the New York State

Legislature did not intend ziplock baggies to constitute drug paraphernalia.  Although Gary

presented these claims on direct appeal, he failed to do so in federal constitutional terms.

At no point in his direct appeal did Gary contend that the admission of the expert testimony

violated the federal Constitution Supreme Court precedent, or federal cases examining the

issue.  The same is true for Gary's legislative intent claim.  Gary presented both claims in

purely state law terms and, thus, these claims are unexhausted.

While failure to exhaust claims generally prevents a habeas court from considering a claim on the merits, an unexhausted claim is deemed exhausted when no real avenue remains open by which it could be exhausted.  Castille v. Peoples, 489 U.S. 346, 351 (1989); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  Gary has already made his one direct appeal and application for leave to appeal to the Court of Appeals.  See Grey v. Hole, 933 F.2d 117, 120–21 (2d Cir. 1991); N.Y.Comp. Codes R. & Regs. tit. 22, §§ 600.8(b), 500.10(a) (2001).

Thus, these claims are deemed exhausted because Gary is procedurally barred from bringing them in state court.  However, when a state court would find the claim procedurally barred, federal habeas courts must also deem the claim procedurally defaulted.  Aparicio, 269 F.3d at 91 (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

Therefore, Gary's claims are procedurally defaulted.

### 3.  Cause and Prejudice

When a petitioner's claim is deemed procedurally defaulted, a federal court may only consider the claim under two limited circumstances: the petitioner shows cause for the default and actual prejudice, or the petitioner shows that failure to consider the claim would result in a fundamental miscarriage of justice.  Coleman, 501 U.S. 722, 750 (1991); Aparicio, 269 F.3d at 90.  Cause can be established by showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court," or that ineffective assistance of counsel caused procedural default.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Prejudice exists where there is a "reasonable probability" that the result of

the proceeding would have been different absent the constitutional violation.  Stickler v. Greene, 527 U.S. 263, 289 (1999).

Here, Gary alleges no cause for procedural default and none appears from the record.  Where, as here, no cause has been demonstrated, a court need not determine whether petitioner suffered actual prejudice.  McCleskey v. Zant, 499 U.S. 467, 502 (1991); Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985).  In addition, based upon the record before this Court, Gary cannot satisfy the fundamental miscarriage of justice exception, which requires Gary to show that he is "actually innocent."  Aparicio, 269 F.3d at 90; Lebron v. Mann, 40 F.3d 561, 564 (2d Cir. 1994).

Therefore, the petition on these grounds should be dismissed.

### 4.  Merits Analysis – Expert Testimony

Gary contends that the use of the expert testimony from Ammann to establish that Gary possessed cocaine with the intent to sell was improper.  Respondent, in addition to arguing that this claim is not exhausted and procedurally defaulted, contends that, even in the alternative, the claim is meritless.

Habeas relief is only available to correct errors of constitutional dimensions or violations of law.  28 U.S.C. § 2254(a) (1994).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).  Federal habeas courts review state court evidentiary decisions only for consistency with due process.  See Patterson v. New York, 432 U.S. 197, 202 (1977); see also Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988), and grant habeas

review only where errors are "so pervasive as to have denied [petitioner] a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985).   State court decisions do not rise to the level of due process violations unless they "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental," Patterson, 432 U.S. at 202.  Where no violation of state law is established, a reviewing habeas court may generally conclude its review and dismiss the claim.  Thomas v. Breslin, No. 01CIV6657, 2002 WL 22015 at *5 (S.D.N.Y. Jan. 9, 2002).

Ammann testified that crack addicts normally use whatever drugs they have until they are gone and would not keep unused drugs overnight.  In addition, Amman testified that a razor blade would be used to cut a larger chunk of cocaine into smaller quantities for packaging and street-level distribution.  Under New York law, expert testimony is admissible at the discretion of the trial court if the court concludes that "'it would help to clarify an issue calling for professional or technical knowledge . . . beyond the ken of the typical [factfinder].'" People v. Hill, 85 N.Y.2d 256, 261 (1995).  In addition, under New York law expert testimony regarding the quantity of crack cocaine for sale, as opposed to personal use, and the manner in which those drugs are packaged, is admissible in a prosecution for criminal possession.  See People v. Hicks, 2 N.Y.3d 750, 751 (2004); People v. Hibbert, 813 N.Y.S.2d 443, 444 (2d Dep't 2006).

The trial court admitted the evidence as relevant to one of the elements of the third-degree criminal possession charge.  The judge, as trier of fact in the bench trial, noted that Ammann's testimony concerned the normal "custom and practice" of crack addicts, was not directly "dispositive . . . of the facts in this case," and that he could "make the distinction as opposed to the jury."  Thus, the court allowed Ammann's testimony.  T. at 141.

-8-

Ammann's testimony concerning the distinct habits of crack users and crack sellers was relevant to an issue in the case – whether Gary possessed crack cocaine for personal use or for future sale.  In addition, the court noted that as fact-finder in this case, he understood the purpose and nature of Ammann's testimony.  As a result, Gary was not denied a fundamentally fair trial by the admission of Ammann's expert testimony.  See Collins, 755 F.2d at 18.

Therefore, in the alternative, the petition on this ground should be denied.

### 5.  Merits Analysis – Legislative Intent

Gary contends that the New York State Legislature did not intend ziplock baggies to constitute drug paraphernalia.  Respondent counters that the claim is meritless.

As noted, habeas relief is only available to correct errors of constitutional dimensions or violations of law.  28 U.S.C. § 2254(a) (1994).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle, 502 U.S. 62, 67–68 (1991).  The determination of the legislative definition of "drug paraphernalia" concerns a matter of state law, does not implicate any federal constitutional issue, and thus, provides no basis for habeas relief.  See id.

In addition, Gary's argument that the second-degree paraphernalia statute does not include plastic baggies is contrary to state law precedent.  Under N.Y. Penal Law § 220.50, a person is guilty of "criminally using drug paraphernalia in the second degree" when he knowingly possesses "glassine envelopes, vials, capsules, or any other material suitable for

the packaging of individual quantities of narcotic drugs" under circumstances demonstrating an intent to manufacture, "packag[e]" or "dispens[e]" the drugs.  N.Y. Penal Law § 220.50(2) (McKinney 2007).  New York courts have interpreted this broadly written statute to include plastic baggies.  See People v. Downs, 21 A.D.3d 1414 (4th Dep't 2005); People v. Elhadi, 304 A.D.2d 982, 982–83 (3rd Dep't 2003).  An examination of the circumstances — large quantity of baggies found in Gary's coat, cocaine in the baggies, a razor blade for cutting large quantities of cocaine into smaller chunks for resale, cocaine residue on the razor blade — and relevant case law evince an intent by Gary to use the baggies for packaging and dispensing the drugs.  See N.Y. Penal Law § 220.50(2).

Therefore, in the alternative the petition on this ground should be denied.

### B.  Fourth Amendment

Gary contends that the trial court should have granted the motion to suppress his jacket, cocaine, and items found in the jacket as evidence because their seizure violated the Fourth Amendment.  Respondent counters that the Fourth Amendment does not require habeas corpus relief on the basis of the introduction of evidence obtained during an unconstitutional search or seizure.  Furthermore, respondent contends that review of Fourth Amendment claims is unavailable unless the state provided no corrective procedures to redress the alleged violation or Gary was precluded from using corrective procedures due to an unconscionable breakdown in the underlying process.  Respondent asserts that the claim of a Fourth Amendment violation was fully reviewed as part of Gary's suppression motion, resulting hearing, and decision.

If the state court "has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the [federal] Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976); Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). This rule applies regardless of the nature of the evidence the petitioner seeks to suppress and includes physical evidence, identification evidence, and confessions. See Cardwell v. Taylor, 461 U.S. 571, 572 (1983); Dawson v. Donnelly, 111 F. Supp. 2d 239, 247 (W.D.N.Y. 2000).

Fourth Amendment claims in habeas petitions can be undertaken in only two instances: "a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70 (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)).

New York's statutory procedure for obtaining suppression of illegally obtained evidence is embodied in N.Y. Crim. Proc. Law § 710 et seq. Gary made a suppression motion, in part pursuant to that section, asserting that the police illegally obtained his jacket, cocaine, and other items found in his jacket. Appendix p. 58. An evidentiary hearing was held, following which the motion to suppress was denied. Appendix p. 90–98. Gary obtained further review of the suppression issue in the state judicial system by raising it in his direct appeal to the Appellate Division, and the Appellate Division found the claim to be without merit. People v. Gary, 19 A.D.3d 1118 (4th Dept. 2005).

Although this claim is thus barred on procedural grounds, Gary also fails to state a substantive claim under the Constitution. The Constitution allows the police to conduct a warrantless search when they have obtained the voluntary consent of a party possessing the requisite authority or control over the premises or property to be inspected. See Schneckloth v. Bustamonte, 412 U.S. 218, 222–26 (1973); Davis v. United States, 328 U.S. 582, 593–94 (1946). Brown initiated contact with the police and consented to their search of the first-floor apartment, where she resided. She made an unconstrained and uncoerced decision to allow the search of her apartment.

Furthermore, the Constitution only requires an investigation of the totality of the circumstances when determining whether an officer had probable cause to seize an individual. See Florida v. Bostick, 501 U.S. 429, 436–40 (1991). Here, there is no evidence to substantiate Gary's claim that the police had no cause to arrest him or conduct the subsequent search of his jacket. At the time McCarthy discovered Gary in the bedroom, the police were still searching for Nathaniel Harvey. McCarthy discovered Gary crouching behind a bed in a dark bedroom wearing only his boxer shorts. In addition, Gary did not initially respond to McCarthy's requests for identification. A reasonable individual in McCarthy's position would have believed that Gary was either Harvey or two, someone attempting to evade police discovery. After Cuda identified Gary and a warrant for Gary's arrest was confirmed, Cuda was required to take Gary into custody.

Once an individual is lawfully arrested and in custody, the effects in his possession at the time and place of arrest may be lawfully searched and seized without a search warrant. United States v. Edwards, 415 U.S. 800, 803–04 (1974); United States v. Reda, 563 F.2d

-12-

510, 511–12 (2d Cir. 1977).  However, the search should be limited to the area within the immediate control of the arrestee to prevent harm to an officer, harm to the arrestee, or the potential destruction of evidence.  See Chimel v. California, 395 U.S. 752, 762–64 (1969).  Here, at no time did Gary deny ownership of the jacket and Fox searched the clothing immediately after Gary's arrest and prior to handing it to Gary.  Thus, there is no evidence to support a substantive claim as the state court provided an adequate corrective procedure to address the alleged Fourth Amendment violation and there was no unconscionable breakdown in procedure.

Therefore, the petition on this ground should be denied.

### C.  Harsh and Excessive Sentence

Finally, Gary contends that the sentence imposed violated his Eighth Amendment right to be free from cruel and unusual punishment.  Respondent counters that this claim is not cognizable for review because the sentence falls within the statutory range.

The Eighth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment and prohibits the infliction of "cruel and unusual punishments."  U.S. Const. Amend. VIII; Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433–34 (2001).   A petitioner may not challenge the length of a sentence that does not exceed the maximum term prescribed by state law.  See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

Here, Gary was convicted of three crimes.  Due to a prior felony conviction, Gary was

sentenced as a second felony offender.  Under New York's predicate felon statute, the trial

court was authorized to sentence Gary to indeterminate terms of imprisonment of twelve

and one-half to twenty-five years for the third degree criminal possession charge.  N.Y.

Penal Law §§ 70.06(3)(b), (4)b) (McKinney 2006).  Furthermore, the trial court was

permitted to sentence Gary to an indeterminate term of three and one-half to seven years

for the fifth degree possession charge, N.Y. Penal Law §§ 70.06(3)(d), (4)b) (McKinney

2006), and a determinate term of one year for the paraphernalia charge. N.Y. Penal Law §

70.15(1) (McKinney 2004).   Gary was sentenced to a total indeterminate term of ten to

twenty years imprisonment.   Therefore, Gary's sentence falls below the maximum sentence

statutorily allowed, does not violate the Eighth Amendment and, thus, the petition on this

ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAY WILL PRECLUDE APPELLATE REVIEW**.

Roland v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d

cir. 1989); 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated:  April 9, 2007

       Albany, New York            United States Magistrate Judge